**FILED**

**DEC 3 1 2024**

**U.S. DISTRICT COURT**
**NEW ALBANY, INDIANA**

UNITED STATES DISTRICIT COURT

SOUTHERN DISTRICT INDIANA

NEW ALBANY DIVISION

No. __4:25-cv-002-TWP-KMB__

DALE WILLIAMSON AND ON BEHALF OF OTHERS DISABLE
IDENVISUAL/STUDENTS
PLAINTIFF
v.

STATE OF INDIANA,

IVY TECH COMMUNITY COLLEGE INDIANA,

IVY TECH COMMUNITY COLLEGE INDIANA  BOARD OF TRUSTEE CHAIR DREW
WILSON professional compactly,

IVY TECH COMMUNITY COLLEGE INDIANA PRESIDET SUE ELLSPERMANN
professional compactly,

IVY TECH COMMUNITY COLLEGE INDIANA GENERAL COUNSEL OFFICE CLAIRE
MCROBERTS professional compactly,

IVY TECH COMMUNITY COLLEGE INDIANA ASSISTAT VICE PRESIDENT CAREY
TREAGER professional compactly,

 IVY TECH COMMUNITY COLLEGE INDIANA SOUTH BEND ELKHART DISABILITY
SERVICES/ EXECUTIVE DIRECTOR OF STUDENT ADVOCACY SANDRA SENATORE-
ROBERTS professional compactly.

 DEFENDANT

## **COMPLAINT**

For his complaint against Ivy Tech Community College ("Ivy Tech"), Plaintiff Dale Williamson,

(collectively referred as "plaintiff") states as follow:

Parties, jurisdiction and venue

1.     Plaintiff  Dale Williamson is an Indiana resident.  He resides at 2914 South Walford

Drive, Jeffersonville, Indiana.

2.    Ivy Tech Community College is a state agency that was created by Indiana State General Assembly pursuant to Indiana code Title 22 section 21.

3.    IC 21-22-3-1 grants power and responsibility to Indiana's Governor for appointing board of trustee members.

4.    IC 21-22-3-2 create The Trustees of Ivy Tech Community College Board to sue or be sued

5.    IC 21-22-6-1 grants board of trustee power and duty to create campuses.

6.    Ivy Tech's By-Laws Article II section 2 grants board of trustee power to create policies; appoint president and general counsel, which also includes overseeing to ensure ITCCI follows all State and federal laws pursuant to IC 21-22-2-3, IC 21-22-3-2, and IC 21-27-6-2. Also see Ivy Tech's By-Laws Article II section 3 (a) Specific Power and Duties of the Trustees1-23.

7.    Ivy Tech's By-Laws Article VI Committees of the Board Section 2 Other Committees. The Experience Committee the Academics

8.    Ivy Tech's By-Laws Article XI section 5 All interested persons have a fundamental duty of loyalty to the college, however the ADA/Title II coordinator has a fundamental duty of loyalty/care to the disable community/indivusal/student.

9.    Ivy Tech Community College Indiana is a state and federal funded public college. Ivy Tech has at least sixteen full time campuses besides Ivy Tech Sellersburg campus , and is listed with the United States Department of Education as a Post Secondary Education provider.

10.    This Court has jurisdiction to pursuant to section 203 of the Act, 42 U.S.C. 12133 and pursuant to the Americans with Disability Act of 1990 (ADA) and section 504 of the Rehabilitation Act of 1973 (section 504).

11.    Venue is proper in Indiana Southern District Federal Court as Plaintiff residents is located in Clark County, Indiana, and both Plaintiff and Defendant regularly conducts business in Clark County, Indiana.

12.    The amount in controversy exceeds the minimum amount for jurisdiction in this court.

### Background Facts

13.    Plaintiff has a learning disability diagnosed since childhood.

14.    After suffering permanent mobility injuries in the line of duty as Firefighter/EMT and other injuries afterwards, preventing plaintiff from being a "safety officer" and severely limiting physical labor occupations.

15.    In 2015 the Plaintiff contacted Indiana Vocational Rehabilitation Services (IVRS) inquiring in occupational retraining under the Rehabilitation Act of 1973, which IVRS reviewed and determine that the Plaintiff was a qualified individual for services and benefits from the IVRS, however IVRS require update testing and evaluation for Post Secondary Education Academic Disability Accommodations and Academic Adjustments.

16.    In 2015 IVRS contracted with Interdisciplinary diagnostic and Evaluation Center (IDEC) Psychometric specialist to perform testing and evaluation of the Plaintiff's Specific Learning Disorder(s) and create specific Title II documentation that meets IVRS's required.

17.    The IDEC title II Documentation includes:

    a.  A current clear statement of disability including diagnosis from DSM-5

    b.  Comprehensive psychoeducational or neuropsychological evaluation, based on adult normed testing on the Wechsler Adult Intelligence Scale-III (WAIS-IV) is preferred.

    c.   Include actual test scores; standard scores are preferred.

    d.   Current Functional Limitations: Information concerning the impact of the learning disability on major life activities as well as the functional limitations and how they currently interfere in the educational setting.

    e.   A narrative clinical summary of assessment procedures that were used to make the diagnosis, evaluation results, history of learning disability

    f.   A list of recommended necessary disability accommodations.

18.    In 2015 the Plaintiff formed Endless Harvest (EH) as part of their IVRS occupational training. program

19.    In 2015 the Plaintiff approached Ivy Tech to see if they could provide the service to fulfill part of the academic portion of the plaintiff IVRS occupational train program, which after meeting with Ivy Tech Sellersburg admission IVRS liaison and Ivy Tech's Disability Support Services (DSS) adviser to go over what services and disability accommodation were offered at Ivy Tech.

20.    The plaintiff was satisfied with what they were told and then applied to Ivy tech who immediately presented Plaintiff with an offer for admission, which the plaintiff accepted signing admission contract.

21.    The Plaintiff then submitted the required specific IVRS/ADA Title II Disability Documentation prescribing disability accommodations/ Academic Adjustments that were necessary to provide plaintiff a fair opportunity to learn and acquire skills.

22.    In 2015 during Ivy Tech's disability request intake Ivy Tech DSS Lisa Goldberg agreed that all requested reasonable disability academic adjustments provided, which among those accommodations was extra time on all test and submission of writing assignments, use of laptop

for taking notes, alternative print material (APM) for required course reading, text to speech software that is compatible with website and online course, and confidentiality.

23.     Plaintiff was enrolled as a student at Ivy Tech and maintained an outstanding grade point average earning a spot on dean's list and membership into Ivy Tech's  Phi Theta Kappa honor society.

24.     Ivy Tech accepted payment from federal and state government agencies on Plaintiff's behalf for tuition at the beginning of each semester.

25.     Plaintiff was issues a DSS Faculty Notification Letter (FNL) that did not clearly provided:

        a.     Extra time (1.5x) for the submission of writing assignments (disability academic requirement);

        b.     Use of laptop for note taking (disability auxiliary aid) ;

        c.     instructors obligation to provide clear written notification explaining undue hardship prior to or at time a reason disability accommodation is being challenge.

26.     Plaintiff was required to notify the Plaintiff's professor at start of class that they were a disable student, explain their disability academic adjustment and have the Ivy Tech's professor sign an Ivy Tech DSS faculty notification letter (FNL) to confirm that they were properly notified.

27.     In 2016, however, Ivy Tech failed to provide Plaintiff access to their disability academic adjustment.

28.     In 2016 Ivy Tech ENG 111 instructor  refused To provide disability academic requirements extend time 1.5 times for the submission of writing assignments, even through

professor syllabus's allow for non disable student to receive accommodation extra time for submission of writing assignments.

29.    In 2016 Plaintiff filed a disability discrimination internal grievance complaint with Ivy Tech Sellersburg DSS who mishandle complaint forwarding to instructor and not Ivy Tech Campus administration, which instructor emailed plaintiff acknowledging being notified disability academic extend time 1.5 times for the submission of writing assignments and the failure to provide disability academic requirements extend time 1.5 times for the submission of writing assignments without out meeting or explaining undue hardship.

30.    In 2016 Plaintiff filed a disability discrimination internal grievance complaint with Ivy Tech Sellersburg Vice Chancellor regarding Ivy Tech Sellersburg DSS mishandling of disability discrimination complaint and  Ivy Tech ENG 111 professor refused To provide disability academic extend time 1.5 times for the submission of writing assignments.

31.    In 2016 In response Ivy Tech Sellersburg Vice Chancellor acknowledge violation making an oral Party Resolution Agreement that Ivy Tech would refunded Plaintiff's course fee and made oral promise to Plaintiff that they would be provided/access disability academic extend time 1.5 times for the submission of writing assignments for ENG 111 or any future courses at Ivy Tech, however Ivy Tech Sellersburg Vice Chancellor would not put agreement in writing.

32.    In 2016 Ivy Tech Sellersburg Vice Chancellor notified Ivy Tech's General counsel and IVY TECH State Wide DSS Coordinator Carey Treager of Ivy Tech Sellersburg DSS failure to follow Ivy Tech's own policies and Ivy Tech ENG 111 instructor  misconduct failure to provided disability accommodation and oral PRA.

33.     However Ivy Tech did not update Ivy Tech's DSS policies and/or the Plaintiff's DSS

FNL list reasonable disability accommodation academic adjustment extend time 1.5 times for the

submission of writing assignments.

34.     In 2017, Ivy Tech English112 instructor failure to proved /interfered with Plaintiff's

disability academic adjustment extend time 1.5 times for the submission of writing assignments

and Plaintiff's use of disability academic adjustment use of laptop for taking notes

35.     In 2017 Plaintiff filed a disability discrimination internal grievance with Ivy Tech Dean

of Students and a meeting was set up to find out why Ivy Tech English112 instructor

denied/interfered with Plaintiff's disability academic adjustment.

36.     In 2017 meeting Ivy Tech English112 instructor acknowledge the failure to proved

/interfered with Plaintiff's use of disability academic adjustment use of laptop for taking notes

and disability academic adjustment extend time 1.5 times for the submission of writing

assignments and that is was based solely on the Plaintiff's disabilities claiming it was because

the Plaintiff did not look at them enough and the plaintiff's use of disability accommodations too

much, even though per Ivy Tech English112 instructor syllabus non-disable student were

allowed to use laptops to take notes and receive  extra time for submission of writing

assignments

37.     In 2017 Once the Plaintiff found out that the reason for why disability academic

adjustment were being denied /interfered with was merely, because of Ivy Tech English112

instructor personal prejudice and double standers that is bias towards Plaintiff because of their

SLD and disability needs to use laptop for taking notes Plaintiff also filed a complaint with the

United States Department of Education (DOE) Office of Civil Rights (OCR) (05-17-2346) which

the DOE OCR determine based on Plaintiff's complaint there was ground to open an

investigation into Ivy Tech for disability discrimination on the follow allegation

38.     In 2017 Ivy Tech Sellersburg Vice Chancellor again acknowledge violation making an

oral Party Resolution Agreement that Ivy Tech would refunded Plaintiff's course fee and made

oral promise to Plaintiff that they would be provided/access disability academic extend time 1.5

times for the submission of writing assignments and use of laptop for note taking for ENG 112

and  or any future courses at Ivy Tech, and update Ivy Tech disability policies however again Ivy

Tech Sellersburg Vice Chancellor would not put agreement in writing.

39.     Ivy Tech Sellersburg Vice Chancellor again notified Ivy Tech's General Counsel and

IVY TECH State Wide DSS Coordinator Carey Treager of Ivy Tech English112 instructor's

misconduct failure to provided disability accommodation and oral PRA.

40.     In 2017 Ivy Tech was order to withheld information from Ivy Tech's HR and Ivy Techs

Bot.

> Please work with Anthony to address the choice of words Jamie Edlin chose in her e-mail correspondence with Dale Williamson.  As you and I read ourselves on Friday afternoon I need Jamie to understand this is unacceptable no matter her level of frustration.  I believe I recall us discussing her tone and lack of professionalism in the Blackboard announcements in the course she took over from Jessica last fall.  If this was not addressed with her at the time please pass along because I intended for it to be addressed with her.
>
> I believe that you and Anthony can handle this discussion with Jamie and it does not need to involve the HR office or me at this time.  However, it is important that it is clear in situations such as the two mentioned above, the apparent tone comes across as childish and I would hope she would agree in hindsight that it was inappropriate.

41.     Inn 2018 DOE OCR and Ivy Tech's general counsel worked out an agreement with the

DOE OCR to stop the investigation, by volunteering omitting that a violation had occurred and

agreed to:

    a.  Ivy Tech would provide Plaintiff disability academic adjustment specifically

       listing ENG 112 that Ivy Tech failed to provide.

   b.  Ivy Tech would train staff and faculty on how to provide disability academic

       adjustments.

42.    In 2018 again Ivy Tech's General Counsel Office and IVY TECH State Wide DSS

Coordinator Carey Treager after being notified order information to be withheld from Ivy Tech's

HR and Ivy Techs Bot.

43.    From 2017 incident -2020 the Plaintiff did not enroll in any classes at Ivy Tech, which

gave Ivy Tech ample amount of time to complete necessary actions to comply with ADA/504.

44.    In 2019 The IDEC Psychometric Specialist that creator of the original title II document

provided a updated clarification document to further explain disability accommodation

recommendation extended time 1.5 times for submission/completion of assignments.

45.    In January 2020 Plaintiff contacted Ivy Tech Sellersburg to inquire on if Ivy Tech would

still honor their past PRA with Plaintiff and DOE OCR PRA of provided Plaintiff English course

112 with access to all Plaintiff's reasonable disability academic adjustment.

46.    In January, 2020 Ivy Tech vice chancellor and dean of student responded "I am pleased

to hear of your interest in returning to Ivy Tech Sellersburg. In response to the case you filed

with the US Department of Education/Office of Civil Rights, Ivy Tech Community College

submitted a Resolution Agreement to address the complaint. As part of this agreement, we

offered you the opportunity to retake ENGL 112 (Exposition and Persuasion) at no charge during

the 18/19 academic year. We will extend this opportunity one time to accommodate your plan to

enroll during the Fall of 2020."

47.    In June 2020 Plaintiff contacted Ivy Tech Sellersburg DSS office to get draft copy of

Plaintiff's DSS FNL would say regarding their disability academic adjustment.

48.    Ivy Tech Sellersburg DSS responded with the following statements:

    a.   "I do not get involved in each individual class syllabus and the due dates. When an assignment is given, it is the student's responsibility to discuss with the instructor what the alternative due date will be."

    b.   "The Accommodate system has a "drop down" menu for accommodations. Although there isn't standard wording for extension time on assignments, it can be worded in a way that is mutually agreed upon between you and the instructor. The standard procedure is for a student to contact the instructor as soon as the assignment is given and to discuss in advance an alternative due date with the instructor."

    c.   "Time and a half on a writing assignment is too ambiguous in wording."

49.    The DSS refusal to provide a DSS FNL clearing listing Plaintiff's disability academic adjustments and requiring the Plaintiff to perform task and negotiate for access to their disability academic adjustment with professors, clearly shows that the Plaintiff's original access to reasonable disability academic adjustment that were agreed to in the DOE OCR PR has been revoked and unclear if access to any of the Plaintiff's disability academic adjustment were going to be granted.

50.    Plaintiff immediately filed internal discrimination complaint and request information on what actions were taken by Ivy Tech since 2018 to comply with VRS/ADA/504.

51.    In 2020 Plaintiff file an AIG disability discrimination complaints with through Ivy Tech's website with Ethics Point, since past AIG disability discrimination were filed with Ivy Tech campus administration, which was forward to Ivy Tech's general counsel office, who refused to open a case or provide requested ADA/504 compliance information.

52.    Plaintiff was once again force to file a DOE OCR complaint (05-20-2393), which was filed June 21, 2020.

53.    On August 18, 2020 once again the DOE OCR open a disability discrimination investigation in to Ivy Tech for the following new and repeat allegations:

   a.    The College failed to adopt grievance procedures that provide for the prompt and equitable resolution of complaints alleging disability discrimination;

   b.    The College failed to designate and identify for students a person who coordinates the College's efforts to comply with Section 504 and Title II;

   c.    In summer 2020, the College retaliated against you for filing complaints of disability discrimination when it failed to provide you necessary academic adjustments;

   d.    In summer 2020, the College discriminated against you based on disability when it failed to provide you necessary academic adjustments; and

   e.    The College failed to provide you a prompt and equitable grievance process for your June 2020 complaint of disability discrimination.

54.    The DOE OCR offer to put a hold on their investigation and host mediation allowing both parties chance to reach an agreement as long as both parties agreed to, which Ivy Tech and the Plaintiff both agreed to schedule mediation.

55.    On September 12, 2020 the DOE OCR held mediation, which failed with no agreement.

56.    Since mediation failed the DOE OCE has resumed their investigation in to Ivy Tech.

57.    On October 08, 2020 Mr. Williamson filed complaint in Indiana Floyd County State Court

58.    Mr. Williamson served the following parties copy of complaint on:

      a.  Indiana AGO received copy of complaint with an AGO Consumer protection complaint form on October 14, 2020

      b.  ITCCI's BoT Chair Mr. Al White on October 13, 2020

      c.  Indiana Governor Eric Holomb on October 13, 2020

59.  On October 12, 2020 DOE OCR dismiss complaint without concluding investigation due to Plaintiff filing complaint in State Court.

60.  In December 2020 Plaintiff filed Motion For Partial Summary Judgment request mandate owe remedy for past PRA and DOE OCR agreements

61.  April 29, 2021 Ivy Tech counsel on record made statement/agreement to take action regarding Ivy Tech's disability policies for Plaintiff to take course:

```
11       MR. LOFTUS:  Mr. Williamson, you may contact me sir if you
12   would like to talk about the case and any kind of settlement.
13       MR. WILLIAMSON: Okay, the main issue I have is Ivy Tech's
14   policies so if they will be changed, I
15       MR. LOFTUS:  Okay, just give me a call
16       THE COURT:  And I just submit Mr. Williamson that I think
17   if you can work something out for your readmission, I think that
18   does change policies and you are the guy on the front line to
19   make sure that those policies are followed in the future.  But I
20   don't want to suggest one way or the other what I think should
21   happen.  So that will be it for today.  I will see you guys on
22   the 20th.
```

62.  In 2022 Ivy Tech's counsel made argument/statement omitting Ivy Tech's Bot had not took any action to remedy past discrimination violations  or PRAs due to not being

informed of any DOE OCR investigations including any agreement or of PRAs made with Mr. Williamson.

63.    In December 2023 discovery Ivy Tech's Counsel on record provide copy of emails showing that Ivy Tech's General counsel and IVY TECH State Wide DSS Coordinator Carey Treager after being notified order information to be withheld from Ivy Tech's HR and Ivy Techs Bot. ,which was not reviewed till around April 2023 with Ivy Tech Counsel on record providing addition Discovery.

64.    In January 2023 Plaintiff notified Defendant of retaking English course starting March 2023.

65.    In January 2023 Plaintiff notified defendat requesting copy of FNF that listed disability accommodation.

66.    Feb 7, 2023 by South Bend DSS Sandra Senatore-Roberts email Yes – I called. Thank you for getting back to me. I am supporting the Sellersburg team as they are transitioning new staffin and getting them trained. I am happy to be working with you.

67.    On February 08, Defendant Sandra Senatore-Roberts provided Plaintiff a copy of FNF with RDA altered

68.    On February 09 2023 Plaintiff filed AIG regarding wording being altered ITCCI instead of listing Mr. Williamson disability accommodation as agreed upon in PRA, ITCCI FNF draft contains problematic wording "*Accommodation Type Description* of Other☐    To accommodate a disability, the student may request flexibility with due dates for assignments requiring extensive reading and/or writing.☐    Student understands that a request for an extension must be made in advance of the due date to be considered for your approval. Which places and additional burden on disable student requiring them to

continuously request for same accommodation with no certainty disability accommodation will be provided, and also change instructor pre-existing obligation to provide disability accommodation to only consideration, denying disabled student of right to primary consideration. . See, e.g., U.Mass-Boston, OCR No. 01-16-2120 (2018); Irvine Valley Coll., OCR No. 09-17-2090 (2017); Laney College, OCR No. 09-12-2317 (2014); Surry Comm. Coll., OCR No. 11-16-2165 (date redacted).To accommodate a disability, the student may request flexibility with due dates for assignments requiring extensive reading and/or writing.

69.    Feb 20, 2023 Mr. Williamson amend complaint To Carey Treager to include regarding Ivy Tech non complaint to ADA/Title II disability discrimination AIG compliant/hearing process citing OCR Docket Number 07142236, and OCR Complaint No. 11-17-2255.

70.    On March 13, 2023 ITCCI Carey Treager Whenever an academic adjustment is requested as accommodation, the College's Disability Support Services office must consider the student's disability and its impact, the requested accommodation, and any unique characteristics of the student's course of study and classes in order to determine whether the requested accommodation is reasonable. Accommodations are thus not automatically given, but rather Disability Support Services will determine what modifications are appropriate and necessary My assessment of your request and the handling of it is that Ms. Senatore-Roberts adhered to these standards established by the Office of Civil Rights

71.    In March 2023 shortly after Carey Treager ruling Ivy Tech Drop Mr. Williamson form English course right before the start of English course.

72.    On January 08, 2024 state court dismissed plaintiff complaint pre trail days before tail schedule to start.

73.    On July 15, 2024 State appeal court affirmed lower court ruling

74.    On October 31, 2024 State Appeal Court certified ruling.

## Argument

75.    Ivy Tech Community College Indiana systematically discriminate against disable Indivusal/Student by depriving access to a qualified campus ADA/Title II Coordinator to oversee campuses' disability departments  or a Governing Statewide ADA/Title II Coordinator  to oversee all campuses informing Ivy Tech's BOT of disability discrimination violation and mandatory remedy including remedy action plan, which has allow for Ivy Tech's President Sue Ellspermann to delegate powers of the ADA Coordinator to unqualified faculty  Ivy Tech's Assistant Vice President Former *Ivy Tech State wide DSS administrator* Carey Treager and Ivy Tech's General Counsel Office to create Ivy Tech's DSS who secretly use special wording on Ivy Tech's DSS FNL  to convert document into a contract with disable student forfeiting primary consideration and allows for faculty to deny Reasonable Disability Accommodation only if faculty believe disability accommodation is not necessary  circumvent ADA/Title II "Undue Hardship" requirement and when/if a disable student files a disability discrimination AIG complaint it is not handle by Ivy Tech's disability department but by Ivy Tech's General Counsel Office with notifies Carey Treager to have all  disability discrimination violations and Party Resolution Agreements withheld from Ivy Tech's HR and Ivy Tech's BoT.

76.    Title II has additional requirements: a college or university must appoint an ADA Coordinator and create an internal grievance procedure if it employs more than fifty people; perform a self-evaluation of the accessibility of its programs and facilities; create

a transition plan to implement necessary modifications; and provide notice of accessibility and the rights guaranteed by the ADA.8 8 28 C.F.R. § 35.105-107.

77.    To initiate the process of obtaining an academic adjustment, generally, the student with a disability makes the request for an academic adjustment. The student's request does not need to be formal or in writing; it can be as informal as a verbal request made to a professor during a class or a school administrator during a test. Nevertheless, the student must make some kind of request for accommodation; it will generally not be inferred from the circumstances. *See Jin Choi v. Univ. of Texas Health Sci. Cntr. at San Antonio*, 633 F. App'x 214, 215-16 (5th Cir. 2015) ("there is simply nothing in Choi's allegations that would have notified the Dental School of Choi's limitations requiring accommodation").

78.    It is important for post-secondary institutions to train staff to identify requests for a reasonable accommodation or academic adjustment as the ADA is clear that students need not use "magic words" when asking for an accommodation. A good example of this concept is illustrated in *Rogers v. Western University of Health Sciences*, 2019 WL 4887847 (9th Cir. Oct. 3, 2019) *Rogers v. Western Univ. of Health Sciences*, 2019 WL 4887847 (9th Cir. Oct. 3, 2019).

79.    Newell v. Cent. Mich. Univ. Bd. of Trustees, 2020 WL 4584050 Legal Brief16 6 Brief No. 45 May 2021 at *9 (E.D. Mich. Aug. 10, 2020) ('Once an accommodation is requested, the school has a duty to engage in the interactive process") also see 28 C.F.R. § 35.160(b)"a public entity shall give primary consideration to the requests of individuals with disabilities."

a. The Title II regulation makes clear that the decision that compliance would be an undue burden or fundamental alteration must be made by the head of the public entity or designee "after considering all resources available for use in funding and operation of the service, program, or activity and must be accompanied by a written statement of the reasons for reaching that conclusion." 28 C.F.R. § 35.164. also see S.3406 ADAAA SEC. 6. RULES OF CONSTRUCTION.``(f) Fundamental Alteration.--Nothing in this Act alters the provision of section 302(b)(2)(A)(ii), specifying that reasonable modifications in policies, practices, or procedures shall be required, unless an entity can demonstrate that making such modifications in policies, practices, or procedures, including academic requirements in postsecondary education, would fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations involved.

b. ADA Best Practices Tool Kit for State and Local Governments https://www.ada.gov/pcatoolkit/toolkitmain.htm Chapter 2 ADA Coordinator, Notice & Grievance Procedure:  Administrative Requirements Under Title II of the ADA.

80. Ivy Tech's DSS discriminate against  at Ivy Tech's Sellersburg Campus  by not having any adequate Disability staff listed on website or at campus.

81. Ivy Tech's DSS policies discriminate against by intentionally not listing and refusing to list "Extend Time for Submission of writing assignment 1.5x times" to Ivy Tech's DSS policies even through all Ivy Tech's instructor's syllabus  has policies for non disable students to receive extra time for submission of assignments .

82. Ivy Tech's DSS policies discriminate against by intentionally not listing and refusing to list "use of Laptop for Note Taking" to Ivy Tech's DSS policies even through all Ivy Tech's instructor's syllabus has policies for non disable students to use laptop's for note taking.

83. Ivy Tech's DSS policies discriminate against by allowing for one DSS/Instructor to provide/grant determining reasonable disability accommodation is necessary while another DSS/Instructor could not provide/deny determining reasonable disability accommodation is not necessary, even through disable student, IVRS and IDEC psychologist has determined reasonable disability accommodation are necessary.

84. Ivy Tech DSS faculty has acted outside of scope by adding problematic contractual wording converting a legal disability faculty notification instrument that service as disable student's self identification that list primary requested Reasonable Disability Accommodations/Academic Adjustments into a legal contractual instrument giving instructor "consideration" allowing for instructor to deny a disable student their Reasonable Disability Accommodations/Academic Adjustments without having to meet ADA/Title II "Undue Hardship" requirement.

85. Ivy Tech's DSS policies discriminate against by not having adequate Disability Discrimination Administrative Internal Grievance complaint process involving ADA/Title II Coordinator or disability faculty.

86. Ivy Tech's DSS policies discriminate against disable students by having all Disability Discrimination Administrative Internal Grievance complaint forward to Ivy Tech's General Counsel Office, even after the United States Department of Education Office of Civil Rights notified Ivy Tech's President that Ivy Tech's General Counsel cannot

perform duties of Title IX Coordinator (which would also apply to ADA/Title II Coordinator) due to natural conflict of interest.

87. Ivy Tech's General Counsel office has acted/is acting outside of scope by performing duties of ADA/Title II Coordinator interfering with /Handling Disable Student's Discrimination AIG complaints and Mandated Good Faith Remedies agreements by not informing Ivy Tech's BoT or Ivy Tech's HR and conspiring to insure ADA/Title II violations (Disability Discrimination) and Party Resolution Agreements information was not passed on to Ivy Tech's BoT or Ivy Tech's HR.

88. Ivy Tech's Carey Treager has acted outside of scope by not informing Ivy Tech's BoT or Ivy Tech's HR of ADA/Title II violations (Disability Discrimination) and Party Resolution Agreements information and conspiring to insure ADA/Title II violations (Disability Discrimination) and Party Resolution Agreements information were not passed on to Ivy Tech's BoT or Ivy Tech's HR.

89. Ivy Tech's Carey Treager has acted outside of scope by use alternate standers in Disability Discrimination AIG complaint than ADA/Title II federal statues based on a preponderance of evidence in order to refuse/not change Ivy Tech's Disability Policies.

90. Ivy Tech's Carey Treager has acted outside of scope by making a legal ruling on Plaintiff's Disability Discrimination AIG Complaint due to lack of legal knowledge or experience, since such action of making a legal determination/ruling is practicing law and must be made by an attorney by Indiana Laws

91. Ivy Tech's president Sue Ellspermann acted outside of scope by not informing Ivy Tech's BoT of United States Department of Education ruling of Ivy Tech's IX Cooridnator

(Carey Treager) and Ivy Tech's General Counsel Office misconduct depriving/interfering with students Right to discrimination AIG complaints.

92.    Ivy Tech's Board of Trustee acted in bad faith to remedy by refusing to update Ivy Tech's By Laws or Ivy Tech's Disability policies even after Ivy Tech's was notified/informed of past USDOEOCR Agreements and Plaintiff's PRA, even though Ivy Tech's agreed to correct Ivy Tech's Disability Policies as part of past PRAs and again in State Court if Plaintiff would register for course, and after finding out of the cover up by top Ivy Tech administration of Ivy Tech's discrimination violation which Ivy Tech Failed/Refused to correct Ivy Tech's Disability Policies even after Plaintiff registered for course with Ivy Tech's Disability Policies being the same/similar as 2015 even today when Plaintiff is filing complaint in federal court Ivy Tech's Disability Policies still unchanged.

## DISABILITY DISCRIMINATION

93.    Plaintiff adopts by reference the averments of the preceding paragraphs as if fully set forth herein.

94.    Ivy Tech owed Plaintiff a duty of care to provide clear and useful DSS letter instructing Plaintiff's professors how to provide reasonable disability academic adjustments for his disabilities as required by 504.

95.    Ivy Tech breached it duty of care owed to Plaintiff's by providing an ambiguous DSS policies, and document, without useful criteria or guideline that did not provide assurance of disability academic adjustments.

96.    Ivy Tech breached it duty of care owed to Plaintiff's by refusing to provide a document for fall 2020, that contain useful criteria or guideline to assurance that access to disability academic adjustments would be granted.

97.    Ivy Tech did not have a proper ADA/504 coordinator at their Sellersburg campus when Ivy Tech Sellersburg made the original offer in 2015, did not appoint one after 2017 DOE OCR investigation, still did not have an ADA/504 coordinator when they ran advertisement specifically targeting individuals with SLD in 2020 and still does not have one at time of writing this complaint.

98.    Ivy Tech has appointed personal in key position (DSS, Title IX coordinator, an vice president of diversity) to replace ADA/504 coordinator that are either unqualified because they lack adequate knowledge of federal laws (civil right and contract) to determine what Ivy Tech's legal obligation are regarding reasonable disability academic adjustments, or appoint personal as with the proper skills need for a fair ADA/504 coordinator , however, without the full power of an ADA/504 coordinator to rule on discrimination internal grievances and to determine what reasonable disability academic adjustment Ivy Tech would provide to students with SLD in order to comply with what the students' disability rights demand and instead still give the power to Ivy Tech's general counsel for legal interpretation and final dissension making on discrimination complaints.

99.    Generally, restatement (Second)of contracts§ 353 holds Ivy Tech to a higher reasonability to performance to prevent education discrimination, because this type of malice action is particularly likely result in causing Plaintiff (disable student) serious emotional disturbance from discrimination action.

100.   Ivy Tech has Fraudulent Misrepresented their willingness to providing the Plaintiff access to their disability academic adjustment for all class that are required to obtain a degree.[1]

101.   Ivy Tech has received unjustly enrichment from the Plaintiff in the form of tuition, book, lab, and other fees for courses taken, that are worthless by themselves, and the Plaintiff is being denied access to the rest of required courses need for a useable degree.[2]

102.   Ivy Tech breached it duty of care owed to Plaintiff's by not providing the plaintiff their right to due process regarding disability discrimination complaints.[3]

---

[1] Darst v. Illinois Farmers Ins. Co., 716 N.E.2d 579, 581 (Ind.Ct.App. 1999), trans. denied (2000).
   The elements of constructive fraud are: (1) a duty owing by the party to be charged to the complaining party due to their relationship, (2) violation of that duty by the making of deceptive material misrepresentations of past or existing facts or remaining silent when a duty to speak exists, (3) reliance thereon by the complaining party, (4) injury to the complaining party as a proximate result thereof, and (5) the gaining of an advantage by the party to be charged at the expense of the complaining party.

[2] In Press Call on Student Borrower Protections, Assistance on June 8, 2015 Secretary of education Arne Duncan had this to say about the fraud that is going on in colleges:

   "Students everywhere deserve and need the opportunity to make their lives better through education - to climb the economic ladder. That's exactly what these students tried to do. But a lot of them ended up with huge debts and a degree that meant little to employers, if they got a degree at all. The whole idea of a career college was a farce for them. (Unintelligible) about bad actors (unintelligible) college industry.
      Now more than ever, a college degree is the best path to the middle class. But at half - but that path has to be safe. And that's why we're all so determined to crack down on colleges that leave students with huge debt, worthless degrees and few meaningful job prospects.
   Some of these schools have brought the ethics of payday lending into higher education. They prey on the most vulnerable students, and leave them with debt that they too often can't repay. We must have accountability to protect both students and taxpayers."

[3] Young v. Quinlan, 960 F.2d 351

Consistent with our approach in Colburn II, the Ninth Circuit Court of Appeals has held that a prison official is deliberately indifferent for purposes of the Eighth Amendment when he "knows or should know" of the danger facing the inmate. See Redman v. County of San Diego, 942 F.2d

103.     Plaintiff adopts by reference the averments of the preceding paragraphs as if fully set

         forth herein.

104.     The United States (U.S.) Congress gave power to the Plaintiff's over their disability

         rights and United States President signed it into law.[4]

105.     Generally, Title II of the ADA (28 C.F.R. § 35.130(a)) prohibits Ivy Tech from

         discriminating against Plaintiff based on his disability.

---

1435, 1443 (9th Cir. 1991), quoting Colburn v. Upper Darby Township, 838 F.2d 663, 669 (3d Cir. 1988).

Colburn v. Upper Darby Township, 946 F.2d 1017

In Colburn I, we also found support for our holding in a line of cases concluding that a detainee has a liberty interest in his or her personal security and that a due process violation occurs when a detainee is injured by a fellow detainee as a result of a custodian's "deliberate or reckless indifference" to the victim's safety. See, e.g., Davidson v. O'Lone, 752 F.2d 817 (3d Cir.1984) (in banc), aff'd sub nom., Davidson v. Cannon, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986). Once again we referred with approval to Judge Wisdom's opinion in the Partridge case:

The principal theory of the complaint in Partridge was that the boy's death was "caused by the detention center's custom or policy of allowing jail procedures that are callous to the point of deliberate indifference to detainees, especially detainees in need of protection from injuring themselves or others." Id. at 1185. The court held that "to the extent that the claim rests on the detention center's deliberate and systematic lack of adequate care for detainees, it alleges the kind of arbitrariness and abuse of power that is preserved as a component of the due process clause in Daniels [v. Williams, [474 U.S. 327], 106 S.Ct. 662 [88 L.Ed.2d 662] (1986) ]." Id. at 1187.

[4] Statement from President G.W. Bush when he signed the ADA into law:

    "Three weeks ago we celebrated our nation's Independence Day. Today we're here to

    rejoice in and celebrate another ``independence day," one that is long overdue. With

    today's signing of the landmark Americans for Disabilities Act, every man, woman, and

    child with a disability can now pass through once-closed doors into a bright new era of

    equality, independence, and freedom."

106.    Section 504 at 34 C.F.R. § 104.4(a) similarly prohibits discrimination based on Plaintiff's disability.

107.    The Plaintiff has been established as a third Party Beneficiary under ADA/504 by IVRS.[5]

---

[5] Third Party Beneficiary

The controlling principles concerning third-party beneficiary claims are well established in Indiana. A third-party beneficiary may directly enforce an agreement in Indiana if (1) the contracting parties intended to benefit a third party, (2) the agreement places a duty on one of the parties in favor of a third-party, and (3) the performance of the provision of the agreement provides the third party with a direct benefit that was intended by the parties under the contract. Mogensen v. Martz, 441 N.E.2d 34, 35 (Ind.Ct.App. 1982); see also St. Paul Fire & Marine Insurance Company v. Pearson Construction Company, 547 N.E.2d 853, 856 (Ind.Ct.App. 1989).

In St. Paul, the owner of a project was found to be a third party beneficiary to the contract between a contractor and subcontractor. The owner's insurer filed a subrogation action against the contractor and subcontractor to recover the amount it paid to owner for damages. The court concluded that the warranty provision contained in the contract between the contractor and subcontractor imposed a duty and provided the proof necessary that the subcontractor intended to provide a benefit to the owner of the project. Further, the court in St. Paul held that "[a]lthough the cases cited concern third-party beneficiary rights to enforce a contract, a party may also use such status as the basis of a duty in a negligent context. In a contract for work, there is an implied duty to do the work skillfully, careful, and in a workmanlike manner. Negligent failure to do so is a tort, as well as a breach of contract." Id. at 857.

108.    Generally, Section 504 at 34 C.F.R. § 104.4 (b) prohibits Ivy Tech from creating a deliberant indifference for Plaintiff, who has disabilities, compared to nondisabled student, by requiring Plaintiff to negotiate with professors for the use of laptop and extra time for the submission of assignment since the same accommodations already listed in professors syllabuses for non-disabled students.[6]

109.    Ivy Tech's DSS policy of negotiation does not ensure compliance to plaintiff's disability rights; they ensure that professors will make sever error (prohibited discrimination) in unlawfully revoke access for unethical reason.[7]

110.    Generally, 45 CFR Part 164 protects Plaintiff private medical information and prohibits Ivy tech from requiring Plaintiff to disclose information listed their Title II disability documentation regarding their disabilities to instructor.[8]

111.    Generally, Section 504 at 34 CFR § 104.7 (a) mandates that Ivy Tech appoint a disability coordinator.[9]

---

[6] MULTNOMAH COUNTY v DAVID UPDIKE
https://www.supremecourt.gov/DocketPDF/17/17-1222/36561/20180226134532291_Petition%20for%20Writ%20of%20Certiorari.pdf "Is the level of discriminatory intent required to award compensatory damages under the ADA and § 504 "discriminatory animus," as three circuits have held, or "deliberate indifference," as five circuits have held, and can the provision of an effective accommodation amount to discriminatory intent?"

[7] Professors may be an integral part of the interactive process, e.g. input into what constitutes a fundamental alteration or essential requirements for a course. However, professors are not qualified to solely determine what the requesting student may be entitled to under Section 504 and Title II. Professors do not necessarily have specialized training in the law or disability issues to make informed decisions about what is legally required by Section 504 or Title II. Thus, leaving students to negotiate with their professors to obtain accommodations compromises the interactive process, which is further compromised because of the disparity in power and authority between a student and a professor who ultimately assigns the student a grade.

[8] DOE OCR docket # 01-16-2120 resolution agreement has a similar determination regarding confidentiality, showing that although students may volunteer details about their disability to faculty, faculty should never ask students to discuss or disclose their particular disability.

112.   Title II of the ADA (28 C.F.R. § 35.107(a) similarly mandates a disability coordinator.

113.   Generally, Section 504 at 34 C.F.R. § 104.7(b) requires Ivy Tech to have a fair equitable disability discrimination internal grievance procedures.

114.   Generally, Section 504 at 34 C.F.R. § 104.8 requires Ivy Tech to have notification on their web site of what Ivy Tech's disability discrimination internal grievance procedures are and who to contact in order filing a complaint.

115.   Indiana code refers to The act of 1973 five (5)different times in Indiana Code Title 21 Higher Education IC 21-12-2-2 (a)(2)(b)(2), IC 21-15-2-1(c)(2), IC 21-15-2-3(b)(2), and IC 21-15-2-5 (b)(2).

116.   Despite its statutory, regulatory and legal obligation to provide accommodations for Plaintiff's disabilities, Ivy Tech's professors were provided a weak, vague DSS policies and DRC letter that offered no guidance.

117.   Generally, Section 504 at 34 C.F.R. § 104 (a) (d) requires Ivy Tech to provide reasonable disability academic adjustments which includes:

118.   Changes in the length of time permitted for the completion of specific courses required and,[10]

---

[9] Ivy tech has received similar warning from DOE OCR docket # 05-14-6001 The College (Ivy Tech) designated its Assistant General Counsel as the one system-wide Title IX Coordinator. Title IX does not categorically exclude particular employees from serving as Title IX coordinators. However, combining the Title IX coordinator responsibilities with the responsibilities of certain employees, such as the general counsel, may raise a serious conflict of interest.

[10] Examples of how Plaintiff disability academic adjustment extended time 1.5x for the submission applies to writing assignments, which the Plaintiff has orally explain to Ivy Tech many times and that the time is need so the Plaintiff can work with Ivy Tech's writing center and Plaintiff private tutors :

119.   The use of laptop for note taking, which Ivy Tech failed to provide.

120.   IC 22-9-5-17 has similar requirements for Ivy Tech to provide reasonable disability accommodations.

121.   Generally, Section 504 at 34 C.F.R. § 104.44 requires Ivy the due process of providing the Plaintiff's access to their disability academic adjustment and if access is denied,

---

1.   In class room assignment can cause a unique issue, since class only meet on curtain days then the assignment would be due the next class or emailed later that next day (students with disabilities like non-disable student cannot always stay after class to finish assignment due to other class obligation and/or outside of the classroom obligations)

2.   Online 8 weeks course which are usually made up of eight blocks with each block covering one week containing two types of work/assignment, first being non-disability related work/assignments (IT work sheets changing formats style, math, ect.) and the second being disability work/assignments (reading over chapters, journal, essay) that do not directly build off each other that start on Monday and due Sunday at midnight giving nondisabled students 7 days to complete all assignments and the extra time (1.5x) would apply to all disability assignments so the due date would no longer be Sunday at midnight it would now be due Wednesday at noon and with the course deadline for final disability assignment due 3.5 day past end of last class.

3.   In person 16 week English course that build a final profile project with 3 main writing assignments due each illustrating a different style with each main assignment given 4 weeks with multiple smaller assignments (drafts, revisions, ect) due throughout the 4 weeks. The different extra time would be 2 weeks making finale assignment due half ways through the next assignment with each small assignment due dates changing and the start date change till the end of the last assignments due date, since a new main assignment in this scenario starts at the beginning of week 5 and does not building off of previous assignment the start date does not change just due date for completion of the new assignments as they applied with previous assignment , which will cause overlapping due dates and this would change the final profile due date 2 weeks passed the last class, which assignment could be submitted to DRC/instructor in person or email.

4.   16 week course that has only 1 single assignment (thesis) due at end of course, since the whole course is a buildup of smaller reading/writing projects/research (assignments) the extra time would be 8 weeks.

demonstrate how that providing Plaintiff's access to their disability academic adjustments essential alter the fundamentals of the course.[11]

122.    42 section 12111 (10) has similar requirement of Ivy Tech to demonstrate that it posed an undue burden on the professor to provide Plaintiff access to their disability accommodation

123.    IC 22-9-5-18 has similar "undue burden" obligations placed on Ivy Tech.

124.    Generally, Section 504 at 34 C.F.R. § 104.44(b) prevents Ivy Tech from using other rules to deny Plaintiff access to their disability academic adjustments.

125.    Generally, Section 504 at 34 C.F.R. § 104.35 prevents Ivy Tech requiring Plaintiff to (re)negotiation on what effective disability academic adjustment that the Plaintiff need because of their disabilities and (re)determine when the plaintiff should receive them.

---

[11] Southeastern Community College v. Davis, 442 U.S. 397 (U.S. Supreme Court, 1979)

Summary: The nursing school rejected the application of student who had a hearing impairment. The school believed that the student would be unable to satisfy the clinical requirements of program. The school was unwilling to allow the student to waive out of the clinical components of program or to assign an aid that would help her to communicate in a clinical setting. The Supreme Court determined that Section 504 did not require the College of Nursing to admit student. The Court's rationale was that 504 did not prohibit institutions from establishing physical qualifications for admission to the clinical program and that the accommodations requested by student amounted to "affirmative action" that was not required under 504. The Court defined "otherwise qualified" as person who can meet all of the program requirements in spite of "handicap".

126.    Ivy Tech failed to provide the required services of approving reasonable disability academic adjustment and creating useful DSS FNL.

127.    The actions above attributable to Ivy Tech were the direct and intentional result of policies in Ivy Tech's DSS that constitute a viscous cycle of constant (re)negotiation for disability accommodations allowing professors to revoke access from student at anytime without notice.

128.    Generally, Section 504 at 34 CFR § 104.6  for their ADA/504 violation requires Ivy Tech to perform a self-evaluation, take voluntary action of necessary steps to comply with ADA/504 and requires Ivy Tech to provide proof of what actions was taken upon request, however Ivy Tech's general counsel has refused Plaintiff request.

129.    Ivy Tech's actions constitute discrimination based on disability.

130.    The actions above attributable to Ivy Tech were intentional and designed to discriminate against Plaintiff and students with SLD.

131.    Ivy Tech DSS policies that Ivy Tech has been used as refusal to make sure Plaintiff received access to their disability academic adjustment and ignoring all the Plaintiff's disability discrimination complaints demanding Ivy Tech comply to ADA/504, has also caused other disable student not to receive disability academic adjustments.[12]

132.    Generally, Section 504 at 34 C.F.R. § 104.34 requires Ivy Tech to provide a safe environment for Plaintiff (students with disabilities) to learn freely, without fear of being mocked, ridiculed or punished by Ivy Tech's faculty  because of their disabilities.

133.    Generally, 28 § 35.134 prohibits Ivy Tech from taking malice actions of Retaliation or coercion against Plaintiff for filing a discrimination complaint.

---

[12] The DOE OCR based on a complaint for a different student open an investigation Ivy Tech on May 21, 2020 for disability discrimination failure to provide disability academic adjustments.

134.    Plaintiff has not been given any written notice of any Ivy Tech code violation or a hearing on any code violation allowing the plaintiff to dispute any false claims of misconduct; however Ivy Tech's general counsel implies that Ivy Tech has terminated their signed contract.

135.    Ivy Tech DSS refused to provide a usable DSS FNL that ensure Plaintiff would have access to the disability academic adjustment, even though Ivy Tech Sellersburg Chancellor was notified by of the DOE OCR PR agreement made to provide the Plaintiff access to their disability academic adjustments.

136.    Ivy Tech's general counsel is stonewalling by denying that there is a legally binding contract between parties and refusing to act in good faith in taking necessary actions to remedy and resolve Ivy Tech's multiple ADA/504 violations.[13]

137.    Plaintiff has tried using all available Administrative  alternative means of dispute resolution, including settlement negotiations, conciliation, facilitation, mediation, factfinding, minitrials, and arbitration, to try and resolve disputes arising ADA/504.

138.    Ivy Tech general counsel has taken intentionally action of stopping investigation and delay in making fundamental necessary changes to comply to ADA/504 forcing the Plaintiff to file civil court case in order to make Ivy Tech revoke the unethical judicial power that general counsel used over determining what is Ivy Tech's obligation to Plaintiff's disability rights and ruling over Plaintiff's disability discrimination internal grievance.

---

[13] Trail v. Boys & Girls Clubs of Nw. In*d.*, 845 N.E.2d 130, 134 (Ind. 2006)). "To state a claim for legal malpractice, Magee was required to allege facts that if proven would establish: 1) employment of the attorney, 2) failure of the attorney to exercise ordinary skill and knowledge, 3) proximate cause, and 4) loss to the plaintiff, i.e. damages. See Flatow v. Ingalls, 932 N.E.2d 726, 729 (Ind. Ct. App. 2010)" also see California's Seaman's Rule: Seaman's Driect Buying Service, Inc. V Standard Oil Company of California, 36 Cal.3d 752 (1984)  A contract party seeking to avoid all libality on a meritorious contract claim by adopting a "stonewall" position ("see you in court") without probable cause and with no belief in the existence of a defense. Such condust goes beyond the mere breach of contract. It offens accepted notions of business ethic.... Acceptance of tort remedies in such a situation in not likely to intrude upon the bargaining relationship or upset reasonable expectations of the contracting party.

## BREACH OF CONTRACT

139.    Plaintiff adopts by reference the averments of the preceding paragraphs as if fully set forth herein.

140.    [t]o recover for a breach of contract, a plaintiff must prove that: (1) a contract existed, (2) the defendant breached the contract, and (3) the plaintiff suffered damage as a result of the defendant's breach." Collins v. McKinney, 871 N.E.2d 363, 370

141.    Pursuant to Restatement Second of contracts § 71 Plaintiff and Ivy Tech are parties to a legally binding contract.

   a.  Plaintiff was required to pay Ivy Tech for the course (which was paid by IVRS and with other government funds)

   b.  Among other thing, Ivy Tech was required to provide Plaintiff with curtain reasonable disability academic adjustments under 504 so the Plaintiff could complete course.

142.    Ivy tech is required to comply with all parts ADA/504 as it is a implied contracts written in the law.[14]

143.    The 14th amendment "equal protection clause" is automatically apart of all Ivy Tech's contracts[15], which protects students' civil rights, including the Plaintiff's disability civil right.

---

[14] A quasi contract or a contract implied in law is an obligation created by law "for reasons of justice, without any expression of assent and sometimes even against a clear expression of dissent . . . . [C]onsiderations of equity and morality play a large part . . . in constructing a quasi-contract . . . ." I A Corbin, Contracts Section 19 (1963). It "is not really a contract, but a legal obligation closely akin to a duty to make restitution." Bloomgarden v. Coyer, 479 F.2d 201, 210 (D.C. Cir. 1973). "A person who has been unjustly enriched at the expense of another is required to make restitution to the other." Restatement of Restitution Section 1 (1937). The underlying basis for awarding quantum meruit damages in a quasi-contract case is unjust enrichment of one party and unjust detriment to the other party. See U.S. Controls Corp. v. Windle, 509 F.2d 909, 912 (7th Cir. 1975); I A. Corbin, Contracts Section 19A (Supp. 1984). The Appellate Division stated the rule as follows: "The injustice of the enrichment or detriment in quasi-contract equates with the defeat of someone's reasonable expectations." See I A. Corbin, Contracts, supra.

144.    Once the Plaintiff notified and provided Title II documentation proof to Ivy Tech that they are an otherwise qualified individual with disabilities and taking course under the 1973 ACT, the burden shifts to Ivy Tech to prove that the action they took were actions of good faith and not discriminatory.[16]

---

[15] *Brown v. Board of Education of Topeka*, 347 U.S. 483 (1954)," was a landmark decision of the U.S. Supreme Court in which the Court ruled that U.S. state laws establishing racial segregation in public schools are unconstitutional, even if the segregated schools are otherwise equal in quality. Handed down on May 17, 1954, the Court's unanimous (9–0) decision stated that "separate educational facilities are inherently unequal", and therefore violate the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution. However, the decision's 14 pages did not spell out any sort of method for ending racial segregation in schools, and the Court's second decision in *Brown II* (349 U.S. 294 (1955)) only ordered states to desegregate "with all deliberate speed".

1.  [16] [The plaintiff] must provide "either direct evidence of discrimination or create an inference of it under the *McDonnell Douglas* burden-shifting framework" to defeat the defendants' motion for summary judgment on his retaliation claim. *Young-Losee v. Graphic Packaging Int'l, Inc.,* 631 F.3d 909, 912 (8th Cir.2011) (citation omitted); *see also Stewart v. Ind. Sch. Dist. No. 196,* 481 F.3d 1034, 1042-43 (8th Cir.2007) ("Without direct evidence of a retaliatory motive, we analyze retaliation claims (whether under Title VII, the ADA, or the ADEA), under the burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)."). *Lors v. Dean*, 746 F. 3d 857 (8th Cir. 2014). Under a modified McDonnell Douglas burden-shifting framework. Id. at 1049–50. Under the first step of the modified framework, a plaintiff must demonstrate that "(1) [he] is disabled; (2) [he] is otherwise qualified; and (3) [he] requested a plausibly reasonable accommodation." Id . at 1050 (internal quotation marks omitted) also see Brown v. Wal-Mart Stores E., L.P., 969 F.3d 571, 578 (5th Cir. 2020) (retaliation plaintiff met prima facie burden based on timing

32

145.    Generally, Section 504 at 34 C.F.R. § 104.41 applies to Ivy Tech once they agree to accept payment from IVRS on behalf the Plaintiff's for fees charged by Ivy Tech for class.

146.    Plaintiff performed his obligations under the parties' contract and required by ADA/504.

---

alone by pointing to six-to-seven-week gap between protected activity and termination); see also Garcia v. Pro. Cont. Servs., Inc., 938 F.3d 236, 243 (5th Cir. 2019) ("At the prima facie case, a plaintiff can meet his burden of causation simply by showing close enough timing between his protected activity and his adverse employment action.") also see U.S.C. § 3617; *see* Brown v. City of Tucson, 336 F.3d 1181, 1191 (9th Cir. 2003) (applying the FHA interference standard to an ADA interference claim). Because the ADA anti-interference clause is identical to the anti-interference clause found in the FHA, *compare* 42 U.S.C. § 3617 *with* 42 U.S.C. § 12203(b), we use the FHA framework to establish the legal standard for an ADA interference claim. In doing so, we determine that a plaintiff alleging an ADA interference claim must demonstrate that: (1) she engaged in activity statutorily protected by the ADA; (2) she was engaged in, or aided or encouraged others in, the exercise or enjoyment of ADA protected rights; (3) the defendants coerced, threatened, intimidated, or interfered on account of her protected activity; and (4) the defendants were motivated by an intent to discriminate. *See* Bloch v. Frischholz, 587 F.3d 771, 783 (7th Cir. 2009) (en banc) (providing the framework for an FHA interference claim)" also see **IC 26-1-1-203Obligation of good faith** Sec. 203. Every contract or duty within IC 26-1 imposes an obligation of good faith in its performance or enforcement.

147.    Ivy Tech cannot contract over and/or use their house policies to keep from perfuming previously made and advertised promises to provide disability academic adjustments to students with SLD.

148.    Generally, Restatement (Second) of contracts § 73 prevents Ivy Tech professors ability to require Plaintiff to bargain for disability academic adjustment, since Ivy Tech professor already have a pre-existing duty under ADA/504 to provide reasonable disability academic adjustment or explain in writing what the undue burden is that prevents them from providing disability academic adjustments.[17]

149.    Generally, Restatement (Second) of contracts § 318 because it is contrary to public policy, prevents Ivy Tech from delegate the performance of the duties of the ADA/504 coordinator of determining what are/not reasonable disability academic adjustments, how to provide these reasonable disability academic adjustments and determining disability discrimination internal grievance to anyone other than ADA/504 coordinator.

150.    Restatement (second) of contracts § 317 has similar wording prevent the assignment of the ADA/504 coordinator duties.

151.    Generally, restatement (Second) of contracts § 250 allows Plaintiff take action once an anticipated breach is knowingly is going to happen.[18]

---

[17] Pre-existing Duty Rule: The pre-existing duty rule is a corollary to the requirement of consideration. Because consideration that makes contracts enforceable must be "bargained for," consideration cannot consist of performance that the party had a pre-existing duty to perform. If the party was legally required to do something in any case, then agreeing to do that very thing is not new consideration that needs to have been "bargained for" by the other party. Therefore, a party's offer of a performance already required under an existing contract, employment term or law is insufficient consideration for a new contract or the modification of an existing contract. As a practical matter, the pre-existing duty rule also maintains the integrity of a contract by preventing parties from using leverage to coerce the other parties into contract modifications.

[18] Once Ivy Tech's DSS informed the Plaintiff that they were not going to assist with ensuring that the Plaintiff would have access to disability academic adjustment in ENG 112 for fall 2020 even though Plaintiff was not yet

152. Ivy Tech breached the parties' contract by failing to perform its 504 oblations under the parties' contract.

153. Plaintiff has suffered damages, and will continue to suffer damage, as a result of Ivy Tech's breach of the parties' contract.

154. Plaintiff is being denied access to fundamental courses that are required to complete their IVRS disability occupational academic retraining.

155. Ivy Tech has directly interfered with Plaintiff's IVRS occupational retraining program to the point of unrepairable harm. [19]

156. Plaintiff has suffered damages, and will continue to suffer damages, as a result of Ivy Tech's actions.

## IVY TECH WAIVE SOVEREIGN IMMUNITY

157. Title II of the ADA 28§ 35.178 waive Ivy Tech State immunity for remedies. [20]

158. Restatement (Second) of contracts § 313 has similar wording that waives Ivy Tech's Immunity.

---

enrolled in class, since Plaintiff knew that they were not going to be guarantee to have access to disability academic adjustment in ENG 112, but just only the opportunity to bargain for them, which is a repeat ADA/504 violation that the Plaintiff has already informed Ivy Tech off previously.

[19] The rule in *Hadley* v *Baxendale* basically says that if A has committed a breach of a contract that he has with B by doing *x*, and B has suffered a loss as a result, that loss will count as too remote a consequence of A's breach to be actionable unless *at the time the contract between A and B was entered into*, A could have been reasonably been expected to foresee that his doing *x* was likely to result in B suffering that type of loss, because either: (1) it would have been quite normal or natural for B to suffer that type of loss as a result of A's doing *x*; or (2) A was informed before he entered into the contract between him and B of any special circumstances which meant it was likely that A's doing *x* would result in B suffering that type of loss.

[20] *Prakel v. State of Indiana*, 2013 WL 3287691 (S.D. Ind. June 28, 2013)
"With regard to the first question, Title II of the ADA expressly provides: "A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this chapter." 42 U.S.C. § 12202. Accordingly, there can be no dispute that Congress clearly and unequivocally expressed its intent to abrogate sovereign immunity for claims such as Mr. Prakel's brought pursuant to Title II of the ADA."

159.    A State shall not be immune under the eleventh amendment to the Constitution of the

United States from an action in Federal or State court of competent jurisdiction for a violation of

civil rights.[21]

## STATUTE OF LIMITATIONS

160.    Fraud: 6 yrs. §34-11-2-7(4)

161.    Contracts: Written: 10 yrs. §34-11-2-11; 6 yrs. for promissory notes

162.    Injury to Person: 2 yrs. §34-11-2-4(1)

163.    Professional Malpractice: 2 yrs. § 34-11-2-3

164.    Catchall : 4 yrs. 28 U.S.C. section 1658

165.    Plaintiff's Complaint does seek redress for lingering effects of the past discriminatory

acts and in his current Complaint, Plaintiff seeks to address Ivy Tech's refusal in June of 2020 to

provide Plaintiff a fair disability discrimination internal grievance hearing regarding Plaintiff

---

[21] Courts have held that "sue and be sued" statutes waive sovereign immunity, and, therefore, courts do not need to consider applicability of § 106.

*In re Epps*, 110 B.R. 691 (E.D. Pa. 1990) (sovereign immunity waived under National Housing Act authorizing HUD to "sue and be sued" in carrying out certain provisions of the Act). Such "sue and be sued" statutes waive sovereign immunity only of particular agencies, not the United States generally. *See Lomas & Nettleton Co. v. Pierce*, 636 F.2d 971, 972-73 (5th Cir. 1981); *Indus. Indem., Inc. v. Landrieu*, 615 F.2d 644, 646 (5th Cir. 1980). If the judgment sought by the plaintiff would "expend itself on the public Treasury," the suit is in reality against the United States regardless of whether the complaint names only Federal agencies or officials. *Dugan v. Rank*, 372 U.S. 609, 620 (1963) (quoting *Land v. Dollar*, 330 U.S. 731, 738 (1947)); *see also FHA V. Burr*, 309 U.S. 242, 250-51 (1940) (garnishment action against Federal agency permitted only to the extent it had funds outside the Treasury); *Presidential Gardens Assocs. v. United States ex rel. Sec'y of HUD*, 175 F.3d 132, 141 (2d Cir. 1999) (waiver of HUD's immunity limited to funds under control of HUD, does not reach general Treasury funds). Finally, in the case of "sue-and-be-sued" agencies, one can argue that, although such governmental units may have independent litigating authority, the Bankruptcy Code, § 106, places limits upon the jurisdiction of the bankruptcy courts over any governmental unit. *Cf. Aetna Cas. & Sur. Co. v. United States*, 655 F.2d 1047 (Ct. Cl. 1981) (although HUD might be suable in other courts upon certain causes of action, Tucker Act places limits upon Court of Claims' jurisdiction over them).

being force to begging Ivy Tech's professor for access to their disability accommodation on every assignment and every class.

166.   Plaintiff has established "a continuing violation." *Perez v. Laredo Junior College*, 706 F.2d 731, 733 (5th Cir.1983), *cert. denied*, 464 U.S. 1042, 104 S.Ct. 708, 79 L.Ed.2d 172 (1984).

<u>PRAYER FOR RELIEF</u>

167.   Plaintiff prays for court writ from the Federal Court forcing Ivy Tech comply with the Disability and Rehabilitation Act of 1973, American with Disability Act of 1990, and American with Disability Act Amendments ACT 2008 by taking the follow action:

168.   Mandatory non monitory and monitory Restitution damages remedies as matter of law to protect/enforce Government's interest in ADA/ADA/Title II

169.   Indiana's Governor appoints an ADA/Title II Coordinator that governs Ivy Tech Community College Indiana that will act as intern ADA/Title II Coordinator over Ivy Tech Community College Sellersburg campus.

170.   Ivy Tech Community College Indiana Board of Trustee creates By Laws of Ivy Tech's ADA/Title II Coordinators.

171.   Ivy Tech Community College Indiana Board of Trustee creates By Laws that Barr Ivy Tech's General Counsel Office from performing/interfering with the Duties of ADA/Title II Coordinator.

172.   Ivy Tech's ADA/Title II Coordinator that governs Ivy Tech Community College Indiana must appoint ADA/Title II Coordinator over Ivy Tech Community College Sellersburg campus and all other campus that has 50 or more employees and students.

173.   Ivy Tech Community College Indiana Board of Trustee creates new Anti Disability Discrimination policies that limits ADA/Tile II Due Process interactive to disable

indivusal only having to self identify providing ADA/Tile II Disability Documentation

with request for Reasonable Disability Accommodations/Academic Adjustments that

includes Reasonable Disability Academic Adjustments "Extended Time for submission

of Writing Assignments of 1.5x Times" and "Use of Laptop for Note Taking" including

creating a general Non-retaliation policy that clarify explains that disability

accommodations cannot be denied/ declarer unnecessary as a form of punishment for

filing Disability Discrimination complaint.

174.    Creating web page that clearly explains what disability rights are, what Ivy Tech's

disability discrimination internal grievance processor is and how to contact Campus and

Governing Statewide ADA/504 coordinator if discrimination accurse.

175.    Ivy Tech Community College Indiana provide Mr. Williamson a Disability Faculty

Notification Letter that includes "Extended Time for submission of Writing Assignments

of 1.5x Times" and "Use of Laptop for Note Taking" and void of all contractual wording.

176.    Ivy Tech Community College Indiana returns all federal funds that list Mr. Williamson

(disable student by name) such as Pell Grant, Stanford Student Loans and Scholarships.

177.    Legal fees

178.    Order barring Ivy Tech General Counsel Office from performing/interfering with duties

of ADA/Title II Coordinator.

179.    Order barring Ivy Tech Campuses Non ADA/Title II Coordinator faculty from

performing/interfering with duties of ADA/Title II Coordinator.

180.    Order barring Ivy Tech Campuses DSS Staff from withhold disability accommodation

wording and altering, adding contractual wording to disability FNL.

181.  Plaintiff has suffered damages, and will continue to suffer damages, as a result of Ivy

Tech's actions and prays for a Monitory damages remedy based on fact finding

investigation by jury trail.  In addition, Plaintiff prays for relief in the form of a money

judgment in his favor against Ivy Tech for; Compensatory, Consequential, , Punitive

reliance, equitable damages; equitable and other relief as appropriate including, but not

limited to costs, attorney fees; and all other relief to which they may be entitled.[22] [23][24] [25]

[26]

---

[22] The First, Fifth, and Sixth Circuits have held that, in order to require a defendant to pay compensatory damages under the ADA and Rehabilitation Act, the defendant must have acted with animus or ill-will.

[23] The Fourth Circuit adopted a different standard for § 504 liability in 1998: that a school can be liable if the school acted with bad faith or gross misjudgment. The 1998 case that S.B. cited in support of this theory–*Sellers v. School Board of City of Manassas*, 141 F.3d 524 (4th Cir. 1998)
[24] In Indiana, punitive damages are only proper when there is "clear and convincing evidence that the defendant acted with malice, fraud, gross negligence, or oppressiveness which was not the result of a mistake of fact or law, honest error or judgment, overzealousness, mere negligence, or other human failing." Wohlwend v. Edwards, 796 N.E.2d 781, 784 (Ind.Ct.App. 2003). "Punitive damages also may be awarded upon a showing of willful and wanton misconduct." Davidson v. Bailey, 826 N.E.2d 80, 85 (Ind.Ct.App. 2005).
[25] Indiana does, however recognize a few exceptions to that general rule. Emotional distress damages may be awarded when a tort involves "the invasion of a legal right which by its very nature is likely to provoke an emotional disturbance." Naughgle v. Feeney-Hornak Shadeland Mortuary, 498 N.E.2d 1298, 1300 (Ind.Ct.App. 1986). Emotional distress damages may also be awarded when the conduct causing the injury was inspired by fraud, malice, or like motives and the conduct was intentional. First National Bank of New Castle v. Acra, 462 N.E.2d 1345, 1350 (Ind.Ct.App. 1984).
[26] 42 U.S. Code § 1981a.Damages in cases of intentional discrimination in employment
(a)RIGHT OF RECOVERY (1)CIVIL RIGHTS In an action brought by a complaining party under section 706 or 717 of the Civil Rights Act of 1964 [42 U.S.C. 2000e–5, 2000e–16] against a respondent who engaged in unlawful intentional discrimination (not an employment practice that is unlawful because of its disparate impact) prohibited under section 703, 704, or 717 of the Act [42 U.S.C. 2000e–2, 2000e–3, 2000e–16], and provided that the complaining party cannot recover under section 1981 of this title, the complaining party may recover compensatory and punitive damages as allowed in subsection (b), in addition to any relief authorized by section 706(g) of the Civil Rights Act of 1964, from the respondent.

## Counts

### Disability Discrimination

182.  Disability Discrimination deliberate indifference violation

183.  Disability Discrimination interfering with disability rights/accommodations violation

184.   Disability Discrimination Failure to provide campus ADA/Title II Coordinator

185.   Disability Discrimination Failure to provide Governing State wide ADA/Title II

Coordinator

186.  Disability Discrimination Failure to provide/denied adequate  ADA/Title II Disability

Discrimination Administration Internal Grievance Complaint/Hearing/Remedies.

187.   Disability Discrimination Ivy Tech's DSS policies creates A Hostel Education

environment

188.  Disability Discrimination Retaliation/ Bad Faith to Remedy

189.  Disability Discrimination Intentional Inflection of Emotional harm

### Breach of Contract

190.  Breach of Contract Interfering with Plaintiff's  IVRS ORTP

191.  Breach of Contract repeat engaging in prohibit behavior

---

(2)DISABILITY In an action brought by a complaining party under the powers, remedies, and procedures set forth in section 706 or 717 of the Civil Rights Act of 1964 [42 U.S.C. 2000e–5, 2000e–16] (as provided in section 107(a) of the Americans with Disabilities Act of 1990 (42 U.S.C. 12117(a)), and section 794a(a)(1) of title 29, respectively) against a respondent who engaged in unlawful intentional discrimination (not an employment practice that is unlawful because of its disparate impact) under section 791 of title 29 and the regulations implementing section 791 of title 29, or who violated the requirements of section 791 of title 29 or the regulations implementing section 791 of title 29 concerning the provision of a reasonable accommodation, or section 102 of the Americans with Disabilities Act of 1990 (42 U.S.C. 12112), or committed a violation of section 102(b)(5) of the Act, against an individual, the complaining party may recover compensatory and punitive damages as allowed in subsection (b), in addition to any relief authorized by section 706(g) of the Civil Rights Act of 1964, from the respondent.

192.    Breach of Contract delegating duties of ADA/Title II Coordinator to unqualified

indivusal or other faculty that is not the ADA/Title II coordinator.

193.    Breach of Contract misrepresenting promise

194.    Breach of Contract Faculty acting outside of scope

195.    Breach of Contract Malpractice of law

I Certify that all statements made are known to be true in Complaint and Respectfully submitted, /s/ Dale Williamson

Dale Williamson

2914 S. Walford Dr.

Jeffersonville, Indiana 47130

(502) 912-7474

Fire4027@gmail.com

## CERTIFICATE OF SERVICE

I certify that on December 31, 2024, the foregoing was served upon the following person(s) by depositing the foregoing in the U.S. Mail, first class, postage prepaid, if exempt or non-registered user.

SERVE:

Indiana Governor

Eric Holcomb

200 West Washington Street

Indianapolis, Indiana 46204,

Indiana Attorney General Office

Todd Rokita

302 West Washington  Street 5th Floor

Indianapolis, Indiana 46204

Ivy Tech Board of Trustee Chair

Andrew Wilson

50 Walnut Street

Saint Lawrenceburg, Indiana 47025

IVY TECH COMMUNITY COLLEGE INDIANA GENERAL COUNSEL OFFICE

Claire McRoberts

50 Walnut Street

Saint Lawrenceburg, Indiana 47025

IVY TECH COMMUNITY COLLEGE INDIANA PRESIDET

Sue Ellspermann

50 Walnut Street

Saint Lawrenceburg, Indiana 47025

IVY TECH COMMUNITY COLLEGE INDIANA ASSISTAT VICE PRESIDENT

Carey Treager

50 Walnut Street

Saint Lawrenceburg, Indiana 47025

IVY TECH COMMUNITY COLLEGE INDIANA SOUTH BEND ELKHART DISABILITY SERVICES/ EXECUTIVE DIRECTOR OF STUDENT ADVOCACY Sandra Senatore-Roberts

22531 County Road 18

Goshen, Indiana 46528